Morning, ladies and gentlemen. Judge Fernandez and I, of course, are here. Judge Burzon had surgery last Friday and he's going to participate at her home through a conference call. Are you there, Judge Burzon? I am, here I am. Feeling OK? I am, thank you. Good. I will call the matters as they appear on the calendar. First item is U.S. v. Somsamouth. Two of them. Let's go. Ready? All right. Somebody come to this. Yes, someone has to come up. All right. Well, if somebody wants to argue, you must come to the lectern and again start your argument. And there's ten minutes total, as you know. Good morning, Your Honor. What I'd like to do is I'd like to start with the issue of the Rule 29 in this case. It's our position that the government at no time throughout the trial presented any evidence of a material false statement in this case. The issue was whether the government proved that there was any material lie in this case. And whether a lie is material with regards to the indictment in this case is whether there was any substantial gainful activity engaged in by the defendants, which in which they later told the Social Security Administration about in an interview that wasn't true. Why is that the only thing that could have been material? Why does it have to be substantial gainful activity to prove substantial gainful activity to be material? Because the Social Security Administration determines eligibility for Social Security income based on two criteria, whether a person is physically or mentally disabled, and secondly, whether they are producing any type of income. And if persons are engaged in normal physical activities such as taking out the trash or mowing the lawn, that doesn't constitute substantial gainful activity, and it will not and has never affected their ability to receive Social Security income. And it's our position that they at no point ever proved in the trial that our clients ever received any income from any of their activities or that their activities were such that it would constitute substantial gainful activity, which would affect their ability to receive Social Security income. And what the problem in the case was is that the judge never gave the jury a definition of what constituted work, and the government suggested that they, that work was defined as any activity that used some type of energy to produce something, which is an extremely broad definition. And the question is whether, whether the question is whether the false statements have a propensity to induce the agency to take action or to influence whatever action the agency might take. Is that not true? That's true. The question of whether a person is working or not, whether the person is engaged in substantial gainful activity, will influence the agency's action. Will it not? Only if it constitutes substantial gainful activity. No. The agency has clearly said that if you're working and not doing substantial gainful activity, we will take that into consideration. We are going to put that into our mix. So by lying, they precluded, as they wished to preclude, any further investigation by the agency. Is that not true? Well, I think that the question was so broad, the definition of work includes any activity that uses energy. Yes. And when they were, if they were asked that question, I think that every single person on SSI, at some point or another, is engaged in the generic. But let's just take a common use of the word, which, whether it's paid or unpaid, it suggests doing activities such as they were doing, i.e., working in a place that did produce income, even if not for them, and doing a fair amount of usual work activity, taking orders and taking money and serving food and so on. Now, couldn't the agency want to know about that, even if it wasn't gainful, because it was related to whether they were disabled at all? I think the answer is no, because it, the agency's not, I don't think, concerned with what type of physical activities people are engaged in. I think that their interest is whether people are engaged in the type of activities that normally produce income and not That's the kind of activity that normally produces income, even if it didn't produce income for them. I'm sorry? That's the kind of activity that normally produces income, even if it didn't produce income for them. Well, that's the issue. I think that the jury was never instructed that they had to make a finding that what they were engaged in was substantial gainful activity, which, in effect, would have affected Social Security Administration's determination on SSI. And that was the problem in our case, that the jury was never instructed, and they were led to believe that any activity could constitute work, and therefore, when they were asked a question, were you engaged in work, and the answer is no. Now, what definition did you offer? I think that the proper definition is that work under SSA is substantial gainful activity. And that's how the Social Security Administration defines work. It's not how it defines work. It uses work separate from the phrase substantial gainful activity. It doesn't say work is substantial gainful activity. SGA is a subset of work. Under administrative proceedings, substantial gainful activity is important because that determines that's the criteria that's going to determine whether somebody's going to qualify for SSI. Of course it's important. That's not the point. The question is whether they were working, not whether they were engaged in substantial gainful activity. Were they working? The answer is no. If you don't crank in your specific definition of work, were they working? If I may, Your Honor, my co-counsel was going to argue the issue of work, and I think that he wants elaborate arguments. So your co-counsel certainly can. You've got four minutes left. Thank you. How much do you represent? Paul Park Sonsomeuth. You represent the husband. Yes. Yes, Your Honor. Michael Roke. I represent the wife, in this case, Kakao. Your Honor, there was a substantial cross-examination. It's not a tag team.  Yes, and I've been watching the clock, Your Honor. So very briefly, the Social Security representative, Ms. Shepard, spoke during cross-examination to her familiarity with the CFRs and all the definitional regulatory definitions that were put to her. And what she addressed was that they talked about earned income credit. The use of the word income was right. Substantial gainful activity was right. And we've argued that in the brief. She had two inquiries. One, were they disabled? That's a given. Why is it a given? That's the part I don't understand. Why is it a given? As to the question of whether they're answering it falsely, was the material falsely, why is it a given? Who's giving it? It was a given at trial. She conceded that it was a medical determination, and she had no problems with the fact that Ms. Kakao Sonsomeuth had an affective disorder. She had a disorder, but whether she's disabled has to do with her ability to work. Well, she was mentally deficient. That's right. But whether she's disabled within the meaning of the SSA, SSA depends upon, in part, whether she can work or do activities that are work-like. And as to that, wasn't the statement quite material? Well, this is SSI, Your Honor, with all respect. SSI, whatever it is. The point is that the regulations seem clearly to contemplate that the issue of whether she can work is relevant to her disability, not simply to the separate issue of whether she's incurring income. Right. And that was Ms. Shepard who made that bifurcation, so I'm using her particular language. She's the one who set up that interview and did the determination. Let me ask you this. Is your client still receiving SSI? You know, she was receiving SSI. SSI. Up to the date of her sentencing is my understanding. I don't know the answer right now. You don't know whether she's receiving it now? I haven't talked to her regarding it. My understanding is they were moving to stop her $600 a month. Well, you just don't know the answer to my question. I don't know the answer. Okay. Do you want to save a minute for rebuttal? You know, I will, Your Honor. So prepare to address the issue of sentencing if it pleases the Court. Yeah. All right. We'll hear from the government. Good morning, Your Honor. My name is Richard Chang. I was trial counsel on this particular case for the government. Let me just answer the first question that the Court had. Are they still receiving SSI? Up to six months ago, they were receiving SSI. They had continued receiving SSI until and even after they were convicted of this case. And quite frankly, that may seem to be a strange situation, but let's look at what this particular charge was about. It was about a false statement. It is not about whether they should get SSI. That is for an administrative law judge. That is for essentially SSA to determine. In fact, after their conviction, after they were proven to be lying about not only their disability but their ability to earn income, they still received it until, in fact, the ALJ judge got back involved in it. Let me just highlight what I just said. Let me ask you this. How was this loss calculated? Loss was calculated from — Was the total loss there, was it 17,500? That's correct. And that was from April of 2000 to essentially the date of arrest in October. I should indicate that specifically the judge, as well as the government, had a difficult time determining how much money the government was defrauding. We did not know when they started working. We didn't know when they started having the ability to start working. All we did know is that in April of 2000, we received a letter at SSA indicating an anonymous letter that these people were working and were working specifically at a location and was very specific as to what they were doing when they worked. Then we started surveillance in October of that same year. And indeed, look at what they did. They take orders at a restaurant. They prepare the food. They serve the food. They take the money for the food. How that could be said to be not working defies belief. Mr. Valencia indicates that taking garbage out has never affected a determination to get or receive SSI. That makes absolutely no sense. There are two reasons why individuals receive SSI. Supplemental security income benefits. You either are disabled mentally or physically, and you can't work. You have no payment. You have no ability to gain any money. Was it true that at the trial the issue of whether they were disabled was, quote, a given, and what does that mean? Well, I think when the defense says it's a given, it wasn't necessarily part of their case. Everyone expected that they didn't want to litigate this factor of whether they were first determined to be disabled or not. And indeed, the ALJ judge determined both these individuals to be disabled, both mentally and physically, back in about eight years prior to that trial when they started receiving benefits. Now, the question again, and the focus is back on the statement itself. On November 2000, November 3rd of 2000, did they lie about it? Did they lie that they were able to work, and did they lie about whether they were getting any income? And clearly, whether they got income or not, they had the ability to work. And that was really at the heart of it. But if they had the ability to work, then they wouldn't be disabled within the meaning of the statute, right? Absolutely. And any layperson, and even the Court itself would probably believe, if they had the ability to work now, eight years after they start receiving benefits, they probably shouldn't have started receiving benefits at all. But this is what I'm asking you, if you can slow down a little. If the investigating person, whose name I now am not remembering. Scott Antolik. I'm sorry, who? SSAOIG agent Scott Antolik. I'm talking about the woman who asked him the question. Oh, I'm sorry. The claims representative was Ann Shepard. Okay. Now, did Ms. Shepard, at trial, in fact say that their disability was not in question? That was not a question that was posed to her, nor an issue that the government ventured into. All right. So the issue, because if the only materiality of the question was as to whether they were, in fact, earning income, then there might, in fact, be an issue. If the materiality went to their actual disability, i.e., their ability to work, then I think there's much less of an issue. Well, I submit to the Court that what is material is both things. In order to get SSI, in order to qualify for this. But not if the disability was conceded. That's what I'm trying to find out. I'm sorry, Your Honor. But not if the disability was conceded. If everybody agreed that she was disabled, and there was no reason why they were disabled, then one might think that it wasn't very material, whether or not they were. Well, I think the question. Everybody wasn't agreeing that they weren't. That's what's being said by the other side. That's the part that's conceded. Well, I still don't understand that, quite frankly, because if that was material, that was material to the determination of whether they should have started receiving it. What was material at the interview was not only their ability to work, but whether they were earning any money as well. One has to go with the other. Well, whether they were earning any money. There really might be a question as to the definition of working and as to the substantiality of the evidence, because it isn't at all clear that the jury understood that to be the question. And, in fact, it probably wasn't the question. But look at the actual forms that were filled out that day during the interview itself. Not only was it a report of continuing disability, which focuses specifically on their mental and physical ability to perform work, which was at the core of the interview, but also about how much money, if, in fact, they do get any money, to determine, in fact, if you get SSI, yeah, you can continue getting SSI, but we will reduce SSA, talking now at this point. We will reduce your amount of SSI proportionate to that amount of money that you get in. So the focus is clearly, even that day, your ability to work, and also if you are able to work just a little, how much are you getting money for and how much will we have to reduce your benefits? What was the amount of the SSI payments? Well, as I understand it from what Mr. Barker has indicated, again, I believe it was approximately $600 or so per person. For SSI? For SSI individually. That's correct. That's taken a big jump in the past 15 years. Well, I mean, it's a graduated sum. Depending on your living condition, if you're living with your daughter and you don't have to pay rent to the daughter, you'll get less SSI. If you're living alone because you have no children, you'll get more SSI. If you are living with another person who gets SSI, as we are in this particular case, you get less SSI individually because you combine the incomes. There is a variety of factors, and quite frankly, I would assume the Court wants the SSA to have a variety of factors to look at to determine benefits. Let me just highlight again the issue of materiality. If intrinsically that question or that response has any ability to influence or a tendency to influence the agency's decision, that is material. How much more material could it be when the question is focused, can you work, and if you do work, how much money do you get? That is at the core of what the SSA is looking for. But the second piece is not relevant to this case because they didn't lie about that. I'm sorry, Your Honor. What's in there? Any piece as to whether or not they were earning any income. A, they were never exactly asked that question, and B, there's no evidence they were earning any income. So we have to take that piece out of the case, right? Let me try to disabuse the Court of whether they were asked that. They were asked specifically, do you get any money? They say no because they don't work. And there's no evidence that they lied about that, so it's out of the case. Well, certainly they lied about that, as was their ability. How do we know they lied about that? I thought the only evidence was that they were doing those stuff. Is there any evidence they got any money? Well, we can see whether they pocketed the money is another thing. But we have a videotape that we presented in which Mr. Sosimoff received money when the undercover agents with a video camera, a hidden video camera, take Mr. Sosimoff's money for the noodles. Do you think that's evidence that he was earning money? Well, I mean. I don't disagree that we haven't proven that they deposited money from, say, their employers or their daughter into the bank to show that that was their particular income. But income is certainly only one of the two main focuses of that interview in which they lied about. If they're lying about their ability, they're lying also about their ability. The estimated loss, as far as the woman was concerned, was how much? I believe it's approximately one-half of the $17,500 that was. And then when did the loss period begin? Well, again, the Court decided that the loss period began at least April of 2000, when the letter was received, the anonymous letter, and went all the way up to essentially the date of conviction. Well, what proof was there that the loss occurred in April? Well, not only do we have the anonymous letter. Had the informer. Besides the informer. That's not evidence. Well, besides that, it was corroborated by Mrs. Cosimoff's own words and her own confession. And I have that here, when she indicated that not only had she been working at that business at the Lau Community Center, but she had assisted and was working at the Lau Temple, which was the previous location of this particular restaurant. That occurred a year later. The judge didn't even count that particular portion of time within the restitution amount. She decided the most conservative way of looking at it is, hey, let's start at April of 2000, because we know you were working then, not only with the letter, but you said it yourself in your confession. I should highlight that it's only Mrs. Cosimoff that can test that restitution amount, by the way, not Mr. Cosimoff. So, again, we have her letter, her statement saying. In her confession, did she say that she was, what, taking money then? Well, let me be more specific and read it to you. The business has been in the Lau Community Center for approximately one year prior to that. This restaurant was operated at the Lau Temple. I also assisted with serving food and delivering the food when it was at the Lau Temple. That business was operated at the Lau Temple for approximately one year. This is one year prior to the location that we found these two individuals in, that she, meaning Mrs. Cosimoff, admitted and confessed to working there. So the court took a very conservative view when it looked at restitution. It didn't even look at what Mrs. Cosimoff said about what she did a year later at a year earlier at a different location. Well, if the period began in October instead of April 2000, how would that change the calculation as far as the four-level increase? It would be October to October. It would have a zero calculation. If we're saying that we're going to start and stop the restitution determination on the very same day. Stop in 2001, I thought. I think it would decrease it by six times, 600 times about six. So it would decrease it about $3,600 or so. But again, we're using April of 2000 because there is a basis. Did that make any difference in the sentencing? I think it would make very little difference because the one criterion that the defense wants to look at is get it below the $10,000 mark. I should say the sentence in this case was probation only. There was no specific amount of time given to these individuals. All right. Thank you. Thank you both. Rebuttal? Yes, Your Honor. On the calculation that was made, counsel. Excuse me. Could you tell me where in the record Ms. Sherworth conceded that that disability was not an issue? It was never proven by the government. I don't have it in front of me. I do have where she says that, and counsel has mentioned that, that she bifurcated the change between disability and income. But there's nothing in the record of the trial where she said the disability was not an issue. I would suggest if you look at the brief, the opening brief on the age. I don't remember the brief. I know you said it, but I don't remember there being any. Age 18, Your Honor. It deals with that. And also in the record of trial 126-9 through 128-11, she talked about the fact that volunteers has no effect on income such that if you volunteered, you don't exclude yourself from SSI. What is interesting in this case is that if work means work for income, which the lie. And it's interesting that they felt the need, Antolik and Shepard, to engraft the word and volunteer on question 11 on that massive form, whatever their motives were or regardless. But or volunteer is immaterial because as she says here, if you volunteer, it doesn't matter. And I think that gets to your question, Your Honor, about, you know, volunteering is working. Not in this context, I submit. In terms of where she was working before for the year prior, which counsel talked about, and this goes to the sentencing issue because I have a few seconds here, the Lau Community Center is just that. It's a community center. It's no showing that any of the work she did before, even if this confession is taken at face value. Are these restitution payments being deducted from whatever Social Security benefits they're getting? Your Honor, I think she's getting Social Security. I just asked you. I don't know. You don't know? I don't know. It's your client. Don't you know? Well, Your Honor, I do know that they would reduce it and they will try to collect it. She has no money. There are. So it's cheap. They can probably do debtors' examinations until they die. But right now, no. Thank you, Your Honor. But I could ask about it. Would you please? Nothing has been deducted from them at all to gain restitution. The restitution amount, as it relates to SSA, is wholly a criminal matter for the government, meaning the prosecution's office, to go after, not being deducted from the SSI benefits, even if they had any at this point. So you just really have something you can put on a wall, on a frame. Well, we'd like to get our, we'd like, the government would like to get some money back. It really would. Okay. All right. The matter will stand submitted. Thank you. Now we come to the second item. Special investments versus Quinn Commander Aircraft Corp. Step right up. Where's the other counsel? There you are. Okay. Good morning, Your Honors. Evan Marshall for the Appellant Special Investments and Paula Bramavis. I think I can be very brief on this. Basically what this comes down to is this is not a case where a twin commander can claim that it was unilaterally dragged into California courts by the action of some third party or that it structured its commercial relationships in such a way that it was not building permanent commercial economic relationships with customers and businesses here. Nor is it a case where it can claim that it did not set out to exploit the California market in some fairly direct manner. Its relationship with the service centers shows quite a deliberate. Counsel, since the district court determined there was no subject matter jurisdiction to start with, it's decided that, right? Yes. And we know there's no subject matter jurisdiction in the Federal courts. Wouldn't a simple thing to be just to simply vacate this order, since there was no subject matter jurisdiction in the first place, and be done with it? That, of course, is the rural gas issue, and I would submit that that is indeed the case. Well, it's sort of rural gas, except rural gas is a question of whether the district judge can take up one before another. And as far as I can tell, nobody told the district judge, aside from filing papers, nobody said to the district judge, look, there's a subject matter jurisdiction question pending, before the judge decided this. And that's the rural gas question, whether the district judge abused his discretion. It's tinged with rural gas. But my question to you is, why wouldn't we vacate it, either because it's moot now, since there was no subject matter jurisdiction, or simply because when the district court doesn't have subject matter jurisdiction, we should set aside any orders that have an important effect on the case? It seems a logical approach, Your Honor. I have a related question, which is another way to sustain the problem. Why don't we have jurisdiction over this case? As I understand it, there was a non-final order, as to which there was never a 54B certification or a statement made. And then there was a remand. So there was never an appealable order in this case, because the second order, the remand order is not appealable. No, the remand order is not appealable. There was an order of dismissal, as to – Right, but that dismissal was never embodied in a final judgment of any kind, because you didn't get the – you could have gotten, but didn't get a 54B determination at the time, right? Yes, Your Honor. Of course, once the matter was remanded, the only thing remaining in this action before the district court was the order of dismissal. Why is it more sensible to see the judge as having sent back the entire case, including the order that he had made, but had never embodied in the final judgment? I think that you may well be correct, Your Honor. I wouldn't contest that. And it all points to having to send this matter back and ultimately back to the state court. But there is a difference. If it's moot, or if we vacate it, then the order is gone. If we don't, you're going to have to take up your question in the state court. Well, I think we're going to end up – Which nobody says you can or can't do that, because we'll wash our hands of it. Yes, I would suspect, Your Honor, that we're going to end up back in the state court with respect to the jurisdictional issues in any event. The personal jurisdiction issue? Yes, the personal jurisdiction issue, unless the Court has any further questions. All right.
judges: Pregerson, Fernandez, Berzon